UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ERIC JOHN WOLFGANG,               :
         Plaintiff           :
                             :
    v.                  :   CIVIL NO. 4:CV-03-167
                             :
                             :   (Judge McClure)
CARL SMITHERS, ET AL.,            :
         Defendants          :

## **MEMORANDUM**

September 1, 2006

### **Background**

The remaining Plaintiff in this pro se civil rights action is Eric John Wolfgang ("Plaintiff"), an inmate presently confined at the Retreat State Correctional Institution, Hunlock Creek, Pennsylvania ("SCI-Retreat").[1] Wolfgang's amended complaint named as Defendants various SCI-Retreat officials and Physician's Assistant ("PA") James Updyke.

---

[1] On September 20, 2004, this Court granted Plaintiffs Steve McCullough, Timothy Hunsinger and Christopher Grob's requests for voluntary dismissal. By Order dated January 11, 2005, a motion for voluntary dismissal by Plaintiff Richard Shipe was granted. Plaintiff David Jacoby's claims were dismissed by Memorandum and Order dated September 26, 2005.

On February 12, 2004, Defendant Updyke's motion to dismiss Wolfgang's amended complaint was partially granted. A September 26, 2005 Memorandum and Order by this Court granted summary judgment in favor of Defendants Joseph Mataloni, Darla Sherman, and Doctor Diaz. Wolfgang's surviving claim against PA Updyke contends that said Defendant failed to provide him with adequate medical care for his work related injuries. By way of background, the Remaining Plaintiff alleges that he was injured as a result of purportedly unsafe working conditions which exist in the SCI-Retreat Correctional Industries laundry ("CI laundry") . Wolfgang allegedly suffered headaches, nose bleeds, red blotches on his skin, dizziness and stomach problems. His amended complaint seeks injunctive relief as well as punitive, compensatory, and nominal damages. Presently pending before this Court is Updyke's motion requesting entry of summary judgment.[2] See Record document no. 155. The motion has been briefed and is ripe for consideration.

**Discussion**

PA Updyke claims entitlement to summary judgment on the grounds that: (1) any conduct occurring prior to January 8, 2001 is barred by the applicable statute of limitations; (2)Wolfgang failed to exhaust his administrative remedies; (3) the

---

[2] PA Updyke is not a Corrections Defendant.

Remaining Plaintiff has not established that he suffered from a serious medical need; and (4) Updyke was not deliberately indifferent to Wolfgang's medical condition.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56©.

> [T]he plain language of Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  "[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's

3

case." Celotex, supra, 106 S.Ct. at 2553 and 2554. Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence" to defeat the motion, consisting of verified or documented materials. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. Id. In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

**Statute of Limitations**

By Memorandum and Order dated March 26, 2004, all of Wolfgang's claims which transpired prior to April 10, 2000 were deemed to be time barred under Pennsylvania's applicable statute of limitations. Updyke presently argues that any claim stemming from conduct which occurred prior to January 8, 2001 is time barred.

A federal court in reviewing the applicability of the statute of limitations to an action filed pursuant to § 1983, must apply the appropriate state statute of limitations which governs personal injury actions. Wilson v. Garcia, 471 U.S. 261, 276 (1985); Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989). The United States Supreme Court clarified its decision in Wilson when it held that

"courts considering § 1983 claims should borrow the general or residual [state] statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 250 (1989).

Pennsylvania's applicable personal injury statute of limitations is two years. See 42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1996); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993); Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir.), cert. denied, 474 U.S. 950 (1985). The statute of limitations "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the Section 1983 action." Gentry v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted).

By way of procedural background, Wolfgang initiated a prior civil rights complaint with this Court. See Wolfgang v. Swithers, et al., Civil No. 4:CV-01-642. On January 14, 2002, his request for voluntary dismissal was granted "without prejudice to Plaintiff's renewal of his claims." Id. at Record document no. 47. The Order forewarned Wolfgang that under Wilson, "renewal of his claims is subject to Pennsylvania's statute of limitations for a personal injury action." Id.

On April 15, 2002, Wolfgang filed a motion "FOR REPLEADING OF CIVIL COMPLAINT  FED. RULES OF CIV. PROC. 81©, RULE 9, (d)." Id. at Record document no. 57. His motion requested that Wolfgang, Civil No. 01-642 be reinstated and/or that he not be held responsible for payment of the required filing fee.

By Order dated January 8, 2003, this Court concluded that there was no legitimate basis for the reopening of this case.  However, the Clerk of Court was directed to treat the complaint attached to Wolfgang's motion as his initiation of a new matter, i.e., his present § 1983 action.

The reinstatement motion which initiated this matter is dated April 10, 2002.  This Court's Memorandum and Order of March 26, 2004 determined that said date should be deemed the filing date of this action.  Based on a review of the parties' pending submissions, this Court sees no reason to depart from that prior conclusion.  Accordingly, any claims regarding Wolfgang's medical treatment by Updyke which occurred prior to April 10, 2000 are time barred.

**Exhaustion**

Updyke's second argument asserts that Wolfgang only initiated one administrative grievance regarding his medical care and that said filing only concerned "Wolfgang's medical treatment after his arrival at SCI-Dallas."  Record document no.157, p. 21.  Consequently, since said grievance does not discuss or make reference to PA Updyke, it is argued that the claims against that Defendant are unexhausted.

42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)).

An inmate's failure to comply with the administrative exhaustion requirement constitutes an affirmative defense. See e.g., Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 2000), cert. denied, 532 U.S. 1065 (2001); Jenkins v. Haubert, 179 F.3d 19, 29 (2d Cir. 1999); Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997)(holding, in the context of a Title VII case, that failure to exhaust administrative

remedies is an affirmative defense).  Consequently, a prisoner does not have to allege in his complaint that he has exhausted administrative remedies.  <u>Ray v. Kertes</u>, 285 F.3d 287 (3d Cir. 2002).  Rather, it is the burden of a defendant asserting the defense to plead and prove it.  <u>Id</u>.; <u>Williams v. Runyon</u>,130 F.3d 568, 573 (3d Cir. 1997); <u>Charpentier v. Godsil</u>, 937 F.2d 859 (3d Cir. 1991); Fed. R. Civ. P. 8©.

With respect to Wolfgang's claims of inadequate medical treatment, the Pennsylvania Department of Corrections ("DOC") has established a Consolidated Inmate Grievance Review System.  DC-ADM 804 (effective January 1, 2001).  With certain exceptions not applicable here, DC-ADM 804, Section VI ("Procedures") provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager; and a final written appeal may be presented to the Secretary's Office of Inmate Grievances and Appeals.

A prisoner, in seeking review through the grievance system, may include "a reasonable request for compensation or other legal relief normally available from a court." (DC-ADM 804-4, issued May 1, 2002).  Furthermore, a grievance must be submitted for initial review to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claim is based.  Allowances of

extensions of time for submission of a grievance may be granted under certain circumstances.

In Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004), the Court of Appeals for the Third Circuit Court recognized that under the DOC's administrative review system a prisoner's grievance should identify specific persons, if practicable. It held that an unexplained failure to identify a responsible prison official in a grievance constitutes a procedural default of the claim. The Third Circuit Court of Appeals added that the prison's grievance process could excuse such a procedural default by identifying the unidentified person and acknowledging that they were fairly within the compass of the prisoner's grievance.

In support of his argument, PA Updyke has submitted a declaration under penalty of perjury by Tshanna C. Kyler, the DOC's Grievance Review Officer. See Record document no. 157, Exhibit C. Kyler states that based on her review of the DOC's grievance appeal records, Wolfgang initiated a grievance and completed an administrative appeal regarding his claim that the prison medical staff failed to provide proper treatment for his rash and a lump on his head, said injuries being attributed to his employment in the CI laundry.

Although the grievance does not specifically mention Updyke, it does clearly indicate that it is being filed regarding lack of treatment for injuries incurred

9

while working in the SCI-Retreat CI laundry and the actions of the defendants named in Wolfgang, 01-642. Since PA Updyke was named as a defendant in 01-642 and was clearly involved in Wolfgang's medical treatment at SCI-Retreat, it is the conclusion of this Court that Plaintiff Wolfgang has satisfied the exhaustion requirement.

**Deliberate Indifference**

Wolfgang's amended complaint asserts that the conditions in the laundry caused him headaches, nose bleeds, dizziness, red blotches on his shoulders and upper arms and stomach problems. He also allegedly discovered a lump on the right side of his neck. Wolfgang claims that he was seen on several occasions by PA Updyke, who purportedly told him that his injuries were not serious and he did not require treatment by a physician, skin specialist, or dermatologist.

Updyke argues that Wolfgang has failed to establish that the Defendant acted with deliberate indifference. The PA acknowledges that his first involvement with Wolfgang occurred on October 15, 1999 when the Remaining Plaintiff underwent a biennial physical examination. As noted earlier, any claim stemming from this examination is time barred. Nonetheless, it is noted that during the examination Wolfgang was found to have areas of hypopigmentation, i.e., skin which lacks or has a less than normal amount of pigmentation. According to Updyke, this

condition which can result in white blotches appearing on the skin, requires no medical treatment.

PA Kuloszewski diagnosed the Plaintiff as having a sebaceous cyst on his neck and prescribed an antibiotic during an August 24, 2000 sick call appointment. On November 4, 2000, Wolfgang was treated for a scalp laceration which resulted from a game of football. Two days later, Wolfgang was again seen by Updyke, who checked his laceration and ordered an antibiotic. Updyke rechecked the wound on November 8 & 10, 2000. On January 11, 2001, Plaintiff was seen by Updyke regarding a circular red lesion on his groin. Updyke diagnosed the lesion as jock itch and prescribed Tolnaftate cream. Wolfgang was transferred from SCI-Retreat on May 1, 2001. Updyke concluded his SCI-Retreat employment during mid-November, 2001.[3] Based on the above, Updyke claims entitlement to entry of summary judgment on the basis that he provided immediate and appropriate care to Wolfgang whenever he treated the prisoner.

Plaintiff counters that his skin blotches was not hypopigmented skin, rather his skin blotches was the same condition developed by other prisoners employed in the CI laundry. He notes that a PA is not permitted to make diagnoses or prescribe medications. Wolfgang adds that he does not recall ever being treated by Updyke for

---

[3] Wolfgang was transferred back to SCI-Retreat on November 27, 2002.

jock itch. Furthermore, according to the Plaintiff all of his sick call requests were for work related ailments. Wolfgang concludes that his version is corroborated by the fact that he voiced the same concerns to SCI-Dallas PA Gallagher.

Pursuant to the Supreme Court's decision in Estelle v. Gamble, 429 U.S. 97 (1976), an inmate plaintiff must demonstrate that prison officials have breached the standard of medical treatment to which he was entitled. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." Id. at 103. However, a constitutional violation does not arise unless there is "deliberate indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain." Id. at 104 (citation omitted). A later decision by the Supreme Court established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).

Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Where a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more

12

than mere negligence.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.  See id.

Deliberate indifference requires more then a medical error.  Rather, it must be shown that a prison official failed to take appropriate action despite his/her knowledge that such conduct would create a substantial risk of serious harm.  The Plaintiff was treated on numerous occasions by the medical staffs at both SCI-Retreat and SCI-Dallas for his medical complaints.  There is no allegation that he was ever refused to be seen by PA Updyke.  Pursuant to a review of the record, other members of the prison medical staff also treated Wolfgang's rash and skin discoloration with a cream and antibiotics and concurred that his lumps were cysts which did not require any further treatment.

All of Wolfgang's medical complaints were addressed in a timely manner by the prison health care staff.  The Plaintiff was clearly provided with treatment by PA Updyke.  His primary allegation is his dissatisfaction with the fact that he was not referred to a skin specialist.  However, a review of Plaintiff's institutional medical records establishes that other members of the prison's health care staff including physicians Renato Diaz, M.D. and Stan Stanish, M.D. were involved in Wolfgang's medical care during the relevant time period and also made no determination that a

13

referral to a skin specialist was warranted. See Record document no 157, Exhibit H. Thus, this is not a case where a course of treatment recommended by a treating physician was not followed by a defendant. Wolfgang's present allegations at best, represent his disagreement with the course of treatment and conclusions made by PA Updyke.

Furthermore, assuming arguendo that Plaintiff should have been referred to a specialist, such a claim sounds in negligence, not deliberate indifference. Under the standards announced in Farmer and Estelle, such allegations do not set forth viable claims of deliberate indifference by PA Updyke. The motion for summary judgment will be granted. Consequently,

**IT IS HEREBY ORDERED THAT:**

>James Updyke, P.A.'s motion for summary judgment (Record document no. 155) is GRANTED.

      s/ James F. Mcclure, Jr.
JAMES F. McCLURE, JR.
United States District Judge